---

CRANE CO. v. SMYTHE et al.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. MECHANICS' LIENS—BANKRUPTCY OF CONTRACTORS—RIGHTS OF MATERIAL-
MEN.

Voluntary bankruptcy proceedings on the part of building contractors prior to lien being filed for material furnished to them and used in the building does not affect the right of materialmen to thereafter file and enforce their lien.

Appeal from Special Term, Monroe County.

Action by the Crane Company against Frederick J. Smythe, as trustee in bankruptcy of Whitmore & Whitmore, bankrupts, and others. From a judgment dismissing the complaint (86 N. Y. Supp. 711), plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Curtis Fitzsimons, for appellant.
Thomas Raines, for respondents.

HISCOCK, J. This appeal involves the question of priority between a trustee in voluntary bankruptcy and a creditor under a mechanic's lien filed after the adjudication in bankruptcy for material furnished to the bankrupts prior thereto. We think that the learned trial justice was wrong in holding, as he did, that the adjudication in bankruptcy cut off the right of the materialman to file and enforce its lien. The defendant Pneumatic Signal Company, being the owner of certain premises, made a contract with the defendants McDonell & Dumond to perform labor and furnish material for a building being erected by said owner. The latter firm made a contract with the bankrupts, Whitmore & Whitmore, by which the latter, as subcontractors, agreed to furnish labor and material required in the performance of the first contract, and plaintiff furnished said last-named

persons, being such subcontractors, material necessary to enable them to carry out their contract. It furnished, with the knowledge and consent of the owner and contractor, materials to the amount and value of $3,124.06, which were actually used in the building, and were not paid for. Upon April 20, 1903, Whitmore & Whitmore, upon their voluntary petition, were adjudged bankrupts, and the defendant Smythe appointed their trustee. Upon April 24, 1903, and within due time as prescribed by statute, plaintiff filed a notice of mechanic's lien in the proper form in the proper county, and served notice thereof as required. The original contractors and the bankrupts as subcontractors had in all respects complied with their contracts, so that there was due and owing from the owner to McDonell & Dumond, and from McDonell & Dumond to the bankrupts or their trustee, prior to the commencement of this action, a sum in excess of the amount of plaintiff's lien. No other persons filed liens against said property.

The underlying question in this case is whether a materialman who furnishes to a contractor materials used in the construction of a building acquires thereby and therefor an inchoate interest or lien which is superior to, and not cut off by, a general assignment for the benefit of creditors, or voluntary bankruptcy proceedings, occurring after the materials were furnished, but before the notice of lien has been filed. Counsel for appellant urges that this appeal may be decided in favor of plaintiff upon another theory. He says that, although plaintiff furnished its materials to the bankrupts as subcontractors, they went into the property owned by the defendant signal company, and under the mechanic's lien law plaintiff has a claim upon that property for the value of its material; that said owner has not transferred its property, and that its only obligation and indebtedness is with and to the original contractors, McDonell & Dumond, who also have not in any way transferred or assigned their claim for the balance due; that the only people who have made any transfer are the subcontractors, Whitmore & Whitmore, who, if they have done anything, have transferred their claim against the original contractors, with whom their contract is; that neither the bankrupts nor their trustee have any claim against the signal company, owner of the property, for the balance still unpaid upon the contract, and therefore the plaintiff may enforce its claim against the property unembarrassed by the bankruptcy proceedings. We regard the main question first above outlined to be authoritatively decided by the Court of Appeals in the case of Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619. In that case the plaintiff furnished materials which were used in the construction of a building between February 9th and March 7th. It filed its lien on March 8th at 9 o'clock. On March 7th the general contractor, to whom the materials were furnished, executed and delivered a general assignment of all of his property for the benefit of creditors, and it was filed in the clerk's office March 8th at 10 minutes past 9 o'clock. While the assignment was executed prior to the filing of the notice of lien, it was not filed until 10 minutes later. The learned judge, who wrote the unanimous opinion of the court, however, expressly disregarded the subsequent filing of the general assignment, and

the court proceeded to a discussion and decision of the case fairly and broadly upon the theory that the notice of lien was not filed until after the assignment. Assuming, therefore, for the moment, so far as the question before us is concerned, that voluntary proceedings in bankruptcy would have the same effect as a general assignment for the benefit of creditors, and that a trustee in bankruptcy would occupy the same position as a general assignee, we have before us precisely the same question which was considered by the Court of Appeals in the Kane Case. After a full and interesting discussion, it was held that "the filing of the notice of lien is the statutory method prescribed by which the party entitled thereto perfects his inchoate right to that interest" which he acquires under the mechanic's lien law by furnishing material or performing labor in the improvement of real property. It was further said:

"A certain time is allowed in which the lien may be asserted or lost. During that time there is a preferential statutory right in the nature of an unperfected equitable lien in favor of the laborer, mechanic, materialman, or subcontractor. And, when a notice of lien is filed, that right is perfected. But until the ninety days allowed by the statute within which the lien may be filed have elapsed, the right cannot be defeated by the voluntary act of the party against whom it might be asserted, such as a general assignment for the benefit of creditors."

And, finally, it was held that the inchoate right acquired by plaintiff in that case when it furnished its material or labor, when perfected by filing its notice of lien subsequent to the general assignment of the contractor, was superior to the general assignment, or any rights acquired by the assignee or the creditors thereunder. The learned counsel for the respondent has with much industry stated many reasons why, and cited many cases alleged to hold that, this should not be so. It hardly seems beneficial to review all of these. If the reasons and authorities stated and cited by him do not legitimately lead to a different conclusion than that adopted in the case referred to by us, they do not require consideration. If they do so lead to a different conclusion, then they must be regarded as modified or overruled by the latest declaration of the law upon this subject by the Court of Appeals.

We do not agree with the counsel in the argument remaining open to him that the voluntary proceedings by the bankrupts in this case were broader and more effective as against the rights of the materialman than was the general assignment in the Kane Case, or that the trustee occupies any different or higher position than did the general assignee. We do not think that it was the intention of the provisions of the bankruptcy act in a case like this to invest the trustee in bankruptcy with any greater or broader rights than the bankrupt himself held, or to affect any lien, inchoate or otherwise, which was effective against the bankrupts. In re Emslie et al., 4 Am. Bankr. Rep. 126, 102 Fed. 291, 42 C. C. A. 350; In re Kerby-Dennis Co., 2 Am. Bankr. Rep. 402, 95 Fed. 116, 36 C. C. A. 677. It is safe to assert that the terms of the bankruptcy act stating and determining the interests of the bankrupt with which a trustee becomes vested are not any broader than were the terms of the general assignment involved in the Kane Case. And, just as in that case, it was held that the general assignee

would take his assignor's interest subject to the inchoate lien of the materialman; so we think that in this case the bankruptcy act must be construed as not intending to free property in the hands of the trustee from any valid lien which existed upon and against it while in the hands of the bankrupt.

We are not able, for the purposes of the question here involved, to detect the slightest real difference in favor of a voluntary bankrupt and his trustee as against a general assignee for the benefit of creditors and his assignor, or to see how the trustee stands in any stronger position as against the lienor than would the general assignee. Moreover, in the case of Matter of Smith & Ryan, decided by Judge Thomas in the Eastern District of New York, and not reported, but referred to in Re Huston, 7 Am. Bankr. Rep. 92, the same conclusions were reached as against a trustee in bankruptcy as were arrived at in the case of the general assignee. And again, in Matter of Roeber, 9 Am. Bankr. Rep. 303, 121 Fed. 449, 57 C. C. A. 565, the Circuit Court, in holding that the rights of materialmen were cut off by bankruptcy proceedings instituted after the materials were furnished, but before the lien was filed, based its decision upon the authority of Armstrong v. Borden's Condensed Milk Co., 65 App. Div. 503, 72 N. Y. Supp. 1014, and Kane v. Kinney, 68 App. Div. 163, 74 N. Y. Supp. 260, and which cases involved the rights of general assignees. There was no suggestion in the Roeber Case that the proceedings in bankruptcy gave any greater rights than a general assignment, or that a trustee in bankruptcy was any different from a general assignee with respect to the questions here being discussed. Both of the cases thus relied upon having been reversed, the Roeber decision and opinion suggest no reason for distinguishing this case from the one to which we have already referred as binding authority.

It is urged that such a decision as this will impair the rights of general creditors, and will be in violation of the spirit and general object of the bankruptcy act, which seeks equality amongst all creditors. It may be answered to this that this state has by legislation of long standing indicated an intention to especially safeguard the rights of those who furnish labor and material towards the construction of a building, and we believe that this legislation should be interpreted in a spirit of liberality towards those for whose protection it was intended. Furthermore, we may add that in balancing up the equities which may be involved in this decision we do not think that there would be any especial balance in favor of a determination which would turn over to a trustee in bankruptcy for the benefit of general creditors specific property which had been created by the labor and materialman, and to the value of which the general creditors had contributed nothing. These views lead us to the decision that the judgment appealed from should be reversed, and a new trial granted.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.