*529 OPINION OF THE COURT
Edward H. Lehner, J.
The central issue before me is whether the mechanic’s lien filed herein is valid when filed in 2000 by a New Jersey entity which was incorporated in 1984 but dissolved in 1990 by the New Jersey Secretary of State for failure to pay taxes, and which has never qualified to do business in New York although it did a significant volume of business here.
On February 4, 2000 a mechanic’s lien in the amount of $258,494 was filed by Precision Specialist Metal & Glass, Inc. (Precision) for labor performed in installing windows at Alfred Lerner Hall on the campus of Columbia University. Pursuant to Lien Law § 17, the lien was extended for another year by notice filed on January 18, 2001. The notice of lien showed the business address of Precision as being in Passaic, New Jersey. The labor was performed by Precision pursuant to a contract with New Jersey Window Sales, Inc. (Sales).
Before me is a motion by Sales to discharge the lien on the grounds that at the time of the lien filing Precision was not in existence because on June 26, 1990 it was dissolved in New Jersey for failure to pay taxes, and because the notice of lien did not comply with Lien Law § 9.
The president of Precision avers that he was unaware of the dissolution until the making of this motion. Precision, which indicated that it has no office in New York, never qualified to do business here although it has performed millions of dollars of construction work in New York since 1988. However, it asserts that it has been paying our State franchise tax and has received authority from the New York State Department of Taxation and Finance to collect sales tax.
On August 28, 2001, Precision obtained a certificate from the Treasurer of the State of New Jersey stating that Precision has paid “in lieu of taxes and penalties, fees for reinstatement” and that it is authorized “to continue its business and resume the exercise of its functions.” Precision also obtained a letter from an employee of the New Jersey Department of the Treasury dated August 21, 2001 stating that the application for reinstatement was being forwarded to the “office of the Attorney General and the Secretary of State for final approval,” and that “when the formal certificate is approved reinstatement of a repealed charter relates back to the date of proclamation of repeal and validates corporate action in the interim.”
However, although this proceeding to discharge the lien was commenced in April, as of the oral argument on September 21 *530 Precision still had not obtained reinstatement of its New Jersey charter, nor obtained authority to do business in New York. A separate action was commenced by Precision in this court in 2000 to recover for the labor performed on a contract basis, which action is pending before Justice York.
The first issue to be resolved is Sales’ argument that the notice of lien should be discharged for failure to comply with the requirement of Lien Law § 9 (1) which mandates that the lienor state in the notice of lien “its principal place of business within the state.” Here Precision did not list a New York address, only specifying its place of business in Passaic, New Jersey.
In the treatise “Mechanics’ Liens in New York,” the author (Robert H. Bowmar) states, with respect to a foreign corporation,- that if “the corporation is found to be ‘doing business’ in New York, then it will have a ‘principal place of business’ here [and] a failure to describe such place in the notice will invalidate the lien” (§ 3.2 at 86-87). The only case cited in support of such proposition is John Roshirt, Inc. v Rosenstock (138 Misc 515 [Sup Ct, Albany County 1930]). In that case the foreign corporation stated that its principal office was in Cleveland, Ohio. However, since the proof showed that the corporation did have a place of business in New York, it was held that the lien was invalid for failure to comply with the foregoing statutory requirement. That decision was followed in J.C. Constr. Mgt. Corp. v Hunt Co. (266 AD2d 512, 513 [2d Dept 1999]), where it was ruled that where a foreign corporation had several places of business in the State, “its failure to recite the address of at least one of those locations on its notice of lien violates the Lien Law § 9 [1] and invalidates the lien.”
But where a foreign corporation was found not to be “doing business” in the State, it was ruled that there “being no principal place of business within the State, the recital of the principal place outside the State was a sufficient compliance with the provisions of the Lien Law” (Butts v Valerio Constr. Co., 236 App Div 299, 301-302 [3d Dept 1932], affd 261 NY 630 [1933]; accord Matter of Artcourt Realty Corp. v Garden State Brickface Co., 39 Misc 2d 796, 798 [Sup Ct, NY County 1963] [“Having concluded that lienor was not doing business in the State of New York within the meaning of the law, it follows that lienor cannot be said to have a principal place of business within the State”]).
On reargument of the decision in Artcourt Realty, the court discussed the Fourth Department decision in Matter of Rappoli *531 Co. v Cupples Prod. Corp. (5 AD2d 758 [1957]). There the Court stated that the facts were similar to that in Butts v Valerio Constr. Co. (supra), except that in the case before it the lienor had filed a certificate to do business in New York naming its office as that of the Corporation Trust Company. The Court denied discharge of the lien based on the finding that the lienor was not in fact doing business in New York, and ruled that “to hold that it nevertheless had a principal place of business at the office of the Corporation Trust Company, which was the address in the certificate, would be an attempt to breathe truth into a fiction” (Matter of Rappoli Co. v Cupples Prod. Corp., 5 AD2d 758). However, the Court went on to conclude that if at trial it was determined that the lienor was in fact doing business in New York, “the lien could then be dismissed and the matter continued as a common-law contract action” (id.).
Upon considering both Butts and Rappoli, the court upon re-argument in the case of Matter of Garden State Brickface Co. v Artcourt Realty Corp. (40 Misc 2d 712, 715) first upheld its prior determination that the lienor was not doing business in the State, but went on to state that even if it was doing business here the result would be the same because the Lien Law “does not require of a foreign corporation lienor the statement of a fictitious address or of an address that does not actually exist [and] [t]his is so whether such lienor has or has not previously filed a certificate of ‘doing business’.”
This latter dicta relates to the situation at bar where the lienor acknowledges that it is doing business here but without a New York office. In my view the result suggested in such dicta represents the appropriate determination. As noted above, there is no requirement that a corporation not considered as “doing business” here set forth a New York address in the notice of lien. Thus, there is no reason to require that a corporation engaging in such activities in New York so as to be deemed “doing business” here, but without a true New York place of business, set forth a New York address in the notice of lien, with the proviso that it name therein an attorney upon whom service may be made in New York with respect to the lien. If such an attorney is named, no prejudice ensues to the lienee by reason of a lack of a New York address of the lienor on the notice of lien. Here the notice of lien specified the name of a New York attorney.
In the papers the parties discuss Business Corporation Law § 1312 (a), which provides:
“A foreign corporation doing business in this state *532 without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation.”
Since the filing of a mechanic’s lien is not the commencement of an “action or special proceeding,” this statutory provision is inapplicable to the issue before me. In this connection, however, it should be noted that for many years, based on authorities such as Tri-Terminal Corp. v CITC Indus. (78 AD2d 609 [1st Dept 1980]), the rule developed that dismissal of an action commenced by a nonqualified corporation was improper, with “the more appropriate remedy * * * [being] not outright dismissal of the complaint, but a conditional dismissal or a stay affording plaintiff an opportunity to cure this nonjurisdictional defect, i.e., to obtain the requisite authority.” However, in Matter of United Envtl. Techniques v State of New York Dept. of Health (88 NY2d 824, 825 [1996]), the Court of Appeals, without discussion, reversed a First Department decision that relied on the Tri-Terminal case, and ruled that a foreign corporation that failed “to file an amended certificate to do business in New York, as required by Business Corporation Law § 1309 * * * lacked capacity to sue in New York.” (Accord Northway Exch. v Dufrane, 258 AD2d 766 [3d Dept 1999]; Scaffold-Russ Dilworth v Shared Mgt. Group, 256 AD2d 1087 [4th Dept 1998]; but see Showcase Limousine v Carey, 269 AD2d 133 [1st Dept 2000]; McIntosh Bldrs. v Ball, 247 AD2d 103 [3d Dept 1998].)
Although, pursuant to the Court of Appeals ruling in United Envtl. Techniques, Precision must be qualified in order to commence a foreclosure action, it has until January 18, 2002 in which to commence such an action (Lien Law § 17). Thus, if Precision was entitled to file the lien, it still has several months to have its existence reinstated in New Jersey and become qualified in New York.
Thus, the determinative legal issue before me turns on whether Precision, which had been dissolved 10 years prior to the filing of the lien, constituted a “de facto” corporation with authority to validly file a lien on real property located in New York.
*533 If the lien had been filed after a dissolution for the purpose of winding up the business of the corporation, the lien would be valid as a “dissolved corporation * * * may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place” (Business Corporation Law § 1006 [a]). However, after dissolution a “corporation shall carry on no business except for the purpose of winding up its affairs” (Business Corporation Law § 1005 [a] [1]; see Matter of Schenectady Mun. Hous. Auth. v Keystone Metals Corp., 245 AD2d 725, 727 [3d Dept 1997] [which authorized the filing of a mechanic’s lien by a corporation that was found “not engaging in prohibited new business, but rather was seeking to collect its assets in the winding up of its affairs through remedies which existed prior to the time of dissolution”]). Such authority is of no aid to Precision which filed its lien in connection with its ongoing business activities.
Also, if sued, a nonqualified foreign corporation could file a mechanic’s lien and as a defendant would be entitled “to have the validity of its lien established and enforced” (Miller v Fitzpatrick, 227 App Div 745, 746 [2d Dept 1929]; see also Warren Trading Corp. v Kraglan Bldg. Corp., 220 App Div 3 [2d Dept 1927]; Dick Sand Co. v State of New York, 137 Misc 622, 624 [Sup Ct, Onondaga County 1930]). Such holding is also of no aid to Precision as here it is not a defendant.
Precision claims that as a de facto corporation it was entitled to file the subject lien. However, having been nonexistent in its state of organization for a decade and having never sought permission to do business in this State, I find that it lacked the power and authority to file the lien and may not take advantage of the de facto corporation doctrine.
In De George v Yusko (169 AD2d 865, 866-867 [3d Dept 1991]), it was held that in “New York, a corporation, during its delinquency and until it receives retroactive de jure status, is essentially legally dead and has no de facto existence.” In Lorisa Capital Corp. v Gallo (119 AD2d 99, 110-111 [2d Dept 1986]), it was held that “a delinquent corporation may not avail itself of the de facto doctrine to preclude third parties from challenging its capacity to sue * * * Moreover, a corporation’s de jure existence is removed for the very purpose of securing compliance with the tax statute. Recognition of de facto status would directly subvert the effectiveness of the sanctions for franchise tax delinquency, removing all incentive for a dissolved corporation to seek reinstatement.” (See also Italian Mosaic & Marble *534 Co. v City of Niagara Falls, 131 Misc 281 [Sup Ct, Niagara County 1928] [holding that a nonqualified foreign corporation may not have filed an enforceable lien with respect to a public improvement]; Berkshire Eng’g Corp. v Scott-Paine, 29 Misc 2d 1010 [Columbia County Ct 1961].)
Accordingly, the motion of Sales to discharge the subject lien is granted.